NEW YORK AND NEW JERSEY LUBRICANT COMPANY, appellant,

*v.*

O. W. YOUNG, a corporation, respondent.

[Argued November 18th, 1914.   Decided June 14th, 1915.]

The complainant put on the market an article which it called "non-fluid oil." It had the consistency of a grease and on account of its non-fluid character might popularly be called a grease. It was composed of oil to an extent varying from seventy-five to ninety-five per cent., and its consistency was obtained by a process of saponification, by which the particles of oil were supposed to be held in occlusion.—*Held*, (1) that the words "non-fluid oil" were descriptive and that complainant was not entitled to an exclusive property right therein; (2) that the product might fairly be called a grease or an oil, that the name "non-fluid oil" was not a material misrepresentation, and that the complainant was entitled to an injunction to restrain simulation by the defendant.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevens.

*Mr. Edward M. Colie* (*Mr. A. D. Kenyon* of New York on the brief), for the complainant-appellant.

*Mr. Chester W. Fairlie* (*Lum, Tamblyn & Colyer* on the brief), for the defendant-respondent.

The opinion of the court was delivered by

SWAYZE, J.

The learned vice-chancellor held that the words "non-fluid oil" were descriptive and could not be exclusively appropriated by the complainant, and that as applied to the product marketed by the complainant under that name, they were descriptive. We agree with him that the words are descriptive. It is shown that there were oils like cocoanut oil, palm oil, and cylinder oils that were non-fluid. There is no reason why any one dealing in those articles should not if he chose call them non-fluid oils, and it may well be that in the progress of knowledge other oils may be produced which shall have the property of being non-fluid; in fact, as will appear, we see no reason why the complainant's product may not be called a non-fluid oil; if so, the defendant's product may be called by the same name. The complainant is not entitled to an exclusive property right in ordinary English words which fairly describe a commodity that is or may be on the market.

We disagree with the vice-chancellor in his conclusion that the application of the name non-fluid oil to the complainant's commodities is a material misrepresentation. The commodities are composed of oil to the extent of seventy-five to ninety-five per cent. By a process called saponification, the particles of oil are supposed to be held in occlusion, so that the resulting product is no longer fluid as the oil was before. In view of the fact that there are substances properly called oils which are not fluid or not always fluid, we see nothing in the meaning of the words non-fluid oil themselves to prevent their application to the complainant's product. A product composed of oil to the extent of seventy-five per cent. may fairly be called an oil. The fact that it is not pure oil is not important. No one

hesitates to call the ordinary water of our lakes and rivers, or that which has fallen in the form of rain, or has been produced by melting ice or condensing steam, by the name of water; nor does the name involve any misrepresentation because the product is not pure water but contains varying percentages of impurities; the name water is not deceptive because pure water is not to be found outside of laboratories. It is quite natural and not improper to call by the name of oil a substance of which oil forms seventy-five to ninety-five per cent. The addition of the word "non-fluid" merely adds a descriptive adjective the truth of which is not questioned. The only difficulty in the case arises from the fact that the parties agree that the complainant's product was a grease; the complainant in the effort to persuade the court that the words "non-fluid oil" were not descriptive and were subject to exclusive appropriation; the defendant in order to persuade the court that the words were deceptive.

The product might with propriety be called either an oil or a grease. The meaning of common English words is not determined *a priori* with scientific accuracy and nicety. Even the lexicographers seem to regard fluidity as a necessary characteristic of an oil, disregarding the existence of palm oil, cocoanut oil, cylinder oils and vaseline. In the case of an article of commerce the meaning of a term is the growth of common usage of the mercantile community. One man looking at the consistency of the product, not unknown but somewhat unusual for an oil, might well call the article a grease; another knowing its actual composition and the mechanical character of the mixture which gave the desired consistency, might well call it an oil. In neither case would a purchaser be deceived. One to whom fluidity was desirable could not help seeing that the complainant's article was not what he desired; the one to whom oil of such consistency as to be non-fluid, was desirable, would get what he wanted.

The vice-chancellor rightly found that in some, at least, of the defendant's cans and packages, there was a design to imitate the make-up of complainant's cans and packages. An examination of those produced before us at the argument justifies the

vice-chancellor's conclusion.    Since we think the complainant is not precluded from relief by its own conduct, we think it was entitled to an injunction to restrain the simulation by the defendant of its products.    To that end the decree must be reversed and the record remitted for further proceedings in conformity with this opinion.    The complainant is entitled to costs in both courts.

*For affirmance*—Kalisch, Black, Williams—3.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Vredenburgh, White, Terhune, Heppenheimer—11.