58

## COOLERATOR CO. v. MARTOCELLO.

## MARTOCELLO v. COOLERATOR CO.

### Nos. 6697, 6703.

Circuit Court of Appeals, Third Circuit.

Aug. 10, 1938.

Synnestvedt & Lechner, of Philadelphia, Pa. (George P. Dike, of Boston, Mass., and George H. Wallace, of Chicago, Ill., of counsel), for Coolerator Co.

Busser & Harding, of Philadelphia, Pa. (Frank S. Busser, of Philadelphia, Pa., and George J. Harding, of Philadelphia, Pa., of counsel), for Martocello.

Before DAVIS and BIGGS, Circuit Judges, and MARIS, District Judge.

BIGGS, Circuit Judge.

These cases constitute an appeal by the Coolerator Company against Joseph A. Martocello, doing business under the name of Jos. A. Martocello & Co., and a cross-appeal by Martocello against Coolerator. We will dispose of the questions raised by both the appeal and the cross-appeal in one opinion.

The bill of complaint alleges that Belshaw and LaCasse are joint inventors of an ice cuber for which they received United States Patent No. 2,030,735. This patent was assigned by them to Coolerator. The bill also alleges that the cuber of Belshaw and LaCasse has been manufactured to a large extent by Coolerator and possesses great utility, and that Martocello was given notice both of the existence of Coolerator's patent and his infringement of it. The appellant alleges that six claims of the patent, viz., 1, 2, 7, 8, 9 and 10, were infringed by Martocello, and prays an injunction and an accounting.

To the bill of complaint Martocello filed an answer and a counterclaim. The answer alleges that Belshaw and LaCasse were not the original or first inventors of the device in suit. Martocello alleges that devices substantially similar to that disclosed by Belshaw and LaCasse were known to and used by others long prior to the filing of the application of Belshaw and LaCasse. The counterclaim alleges that R. T. Brizzolara was in fact the true, original and first inventor, that for his invention the United States Patent Office issued Patent No. 1,709,709 to him upon April 16, 1929, upon an application filed September 9, 1927. Brizzolara's patent was duly assigned by him to Martocello upon October 30, 1934.

The learned District Judge found that four of the six claims of the Coolerator patent, namely claims, 1, 2, 8 and 9, were void because of prior knowledge and use by Walter H. Haupt, of Ludlow, Kentucky, but he held claims 7 and 10 of the patent to be valid and infringed. He also held that claim 7 of the Brizzolara patent was void as anticipated and for want of invention and that claims 3 and 8 were void for want of invention.

Coolerator has appealed from that portion of the decision holding claims 1, 2, 8 and 9 to be invalid and Martocello has appealed from that part of the decision holding claims 7 and 10 to be valid and infringed. Martocello has also appealed from that portion of the decision holding void the three claims referred to of the Brizzolara patent.

Before entering upon a discussion of the questions here involved, it is necessary to state what we understand an ice cuber to be. It is a device made of metal shaped in the form of cubes, commonly called a grid. The grid is placed upon a block of ice and by reason of the melting of the ice along the edges of the grid, this

element sinks into the ice, forming cubes, which may be removed conveniently from the block. The grid may be associated with some heating device, such as a tank containing warm water attached to the top of the grid. Belshaw and LaCasse have as their heating element a water tank of the type referred to, as had Haupt. Brizzolara contemplated other heating means for the grid, such as "electrical resistance or heating units carried in the grid structure."

As to the Case Upon the Appeal as Distinguished from the Cross-appeal.

The learned District Judge states in his opinion that the only defense urged upon trial by Martocello was prior knowledge and use by Haupt. We concur in this statement.

It appears from the record that Haupt was a mechanical engineer. He made a drawing of an ice cuber and from this drawing a cuber was constructed which he used to little effect in his home for a period of six or eight months. The learned District Judge refers to this first structure as an unsuccessful experiment not constituting a reduction to practice of the invention disclosed in Coolerator's patent. Since this finding is fully supported by the evidence, we feel that Haupt's first cuber does not require further discussion.

Later, Haupt made a second device which the learned District Judge considered not to be such as would clearly support a claim to the invention here in suit. In February, 1932, however, still prior to the filing date of Belshaw and LaCasse, Haupt made two drawings which he submitted to Progress Refrigerator Company, of Louisville, Kentucky, and from these drawings that company constructed a cuber which is a physical exhibit in evidence. It consists of a grid, designed to fit upon the end of a hundred pound ice cake, divided into cubes. The grid was fastened to a tank. The tank was to be filled with water. The heat from the water in the tank was communicated from the bottom of the tank to the top of the grid, thus hastening the melting of the ice about the metal of the grid.

Haupt offered the device for manufacture to Progress Refrigerator Company for two purposes, namely, to cool the water in the tank and to create ice cubes. Progress proceeded to build the cuber in accordance with blue prints furnished it by Haupt. After the physical exhibit referred to had been built and tested, Cloud, the president of the Progress Company, wrote Haupt upon June 3, 1932, as follows: "We find it works to the extent of perfectly cutting cubes and cooling water but we are of the opinion that a serious objection would arise to the excessive meltage of ice. * * * Another objection seems to be that the fins become so thoroughly embedded into the ice cake that often it required a very hard pull to separate. In fact in several instances the entire cake could be lifted from the chamber simply by gripping of the fins into the ice." He then concluded his letter by stating that he believed that his company would not be interested in manufacturing the cuber and thereupon he returned the blue prints to Haupt.

The District Judge states in respect to the objections raised by Cloud in the letter, "I am inclined to think that these objections were more or less imaginary. Certainly there was not the slightest trace of sticking to the ice when Exhibit D-14 (the cuber referred to) was demonstrated before me, and I could see no evidence of excessive meltage of ice. * * * I have no doubt that the real reason that the Progress Company did not undertake the manufacture of these articles was that it erroneously judged that there would be no demand for them and that it did not want to go into a new line in 1932. Substantially, that is what Mr. Cloud testified. He said, 'I considered that the device was successful in performing the operation that it was supposed to perform,' and also, 'I did not think at the time that there was demand that would justify the expense of tooling up to produce them on an economical basis.'"

The learned District Judge held that the evidence in respect to the Haupt cuber met the legal requirements as to weight and sufficiency in proving prior invention and prior knowledge in Haupt. He held therefore that Haupt and not Belshaw and LaCasse was the first inventor of a cuber, the essential idea of which was the combination of a grid and a hot water container, and that Haupt first reduced this idea to practice. We are in complete accord with these findings of the District Judge.

He goes on, however, to distinguish between the Haupt cuber and the cuber of

Belshaw and LaCasse under Coolerator's patent, and points out the difference in the periods of time which the two cubers required to fulfill their function. The Belshaw and LaCasse device formed cubes within a very short time, viz., five to ten minutes. The Haupt device required about three-quarters of an hour to form cubes. The learned District Judge holds this difference in time of functioning to be most important in view of the fact that because of it the Haupt device could not compete with that of Belshaw and LaCasse in use in the ordinary household.

The trial judge then states, "The reason for the difference in operation is pretty obvious. In the Haupt cubers the grid plates are slightly spaced away from the tank, and the attachment at their ends is rather slender. The result is that the transferrence of heat from the hot water container to the grid plates is slow. Haupt clearly recognized that this was a big difficulty, because he tried to meet it by lapping or bending over the grid plates against the bottom of the tank. * * * The extremely slow performance of his cubers, however, indicates that this difficulty was only partially overcome." It appears, and the District Judge found, that Belshaw and LaCasse caused the grid plates to be welded their whole length to the tank, which effected a more satisfactory heat connection than any disclosed in the Haupt device.

Belshaw and LaCasse also disclosed small openings or vents in the grid section just below the bottom of the tank to allow the escape of excess water and air from the grid. Haupt's device contained openings irregularly spaced around the top of the grid, caused, we think, by the fact that the grid was not welded its whole length or solidly to the tank. The District Judge states his conclusion in respect to the vents or openings disclosed by Belshaw and LaCasse and Haupt, as follows: "Thus the plaintiff's structure and patent differs from the Haupt devices in a very important particular. If Haupt had applied for a patent he might, on his construction, have claimed openings in the grid adjacent to the bottom of the tank, but he could hardly have claimed openings 'below the bottom of the tank' as disclosed in the Belshaw patent and expressly claimed in claim 10. This was a feature of the Belshaw and LaCasse patent which Haupt did not invent. On the other hand, the broader claims 8 and 9 of Belshaw and LaCasse fail to cover any element which Haupt did not also have. They are for his basic idea and are void."

The trial court therefore concluded that Haupt neither invented nor reduced to practice the invention claimed by claims 7 and 10 of Coolerator's patent and that claims 7 and 10 are therefore valid and infringed by Martocello.

■ There is no question as to infringement if the claims be valid. Infringement is in fact conceded. We think, however, that the improvement of a more perfect heat conducting connection between the grid and the tank than that displayed in the Haupt device and the creation of holes below the bottom of the tank to emit excess air and water from within the grid are not sufficient to bring the device disclosed by Belshaw and LaCasse to the dignity of invention. The additional elements added by Belshaw and LaCasse to the prior art as exemplified by Haupt seem to us to constitute mere mechanical improvements of the sort which might be expected of those reasonably skilled in the art. Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Electric Cable Joint Co. v. Brooklyn Edison Co., Inc., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres, Inc., v. American Tri-Ergon Corporation, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005.

■ For this reason, in our opinion, the holding of the learned trial judge in respect to the validity of claims 7 and 10 of the Coolerator patent cannot be sustained. These claims must be held to be void for lack of invention.

As to the Case Upon the Cross-appeal.

■ As we have stated, Martocello claimed in his counterclaim that Brizzolara was the true, original and first inventor of the cuber and that his invention was embodied in Patent No. 1,709,709, assigned to Martocello. Martocello further contends that Coolerator by manufacturing and selling the Belshaw and LaCasse device infringes claims 3, 7, and 8 of the Brizzolara patent.

The court below held that the seventh claim of Brizzolara's patent is a process claim in the broadest terms and covers the ordinary method of cubing ice by scoring the surface of a block with intersecting grooves and then breaking off the cubicle pieces so formed. That this ruling

is correct is so obvious as to require no discussion, and that it is anticipated by Patent No. 546,283, issued to Milliken upon September 10, 1895, is equally plain.

Claims 3 and 8 are for Brizzolara's structure. These claims disclose a method of heating the grid by electricity, wires being embedded in the grid. As the learned District Judge holds, every pertinent element contained in Brizzolara's patent is disclosed in patents to Pusey, No. 525,028 and No. 530,127, and to Gee, No. 1,584,921, except certain flanges projecting from some of the grid plates to prevent the grid from sinking too deeply into the ice. Such a minor and mechanical improvement could not support invention upon Brizzolara's part.

Those portions of the interlocutory decree of the District Court, filed January 31, 1938, inconsistent with this opinion are reversed and the cause is remanded with directions to dismiss the bill of complaint as well as the counterclaim.