## GOLDSMITH METAL LATH CO. v. MILCOR STEEL CO.

### Civ. No. 82.

District Court, D. Delaware.

Dec. 21, 1943.

[1] Federal Register, Vol. 7, page 4951, Sections 800.3, 800.55, and 800.56; and pages 4952 to 5019, Sections 801.1 to 807.-12.

Joseph Handler, of Wilmington, Del., and Edwin Levisohn (of Levisohn, Niner & Levisohn), of New York City, for plaintiff.

Caleb S. Layton (of Richards, Layton & Finger), of Wilmington, Del., and George L. Wilkinson (of Wilkinson, Huxley, Byron & Knight), of Chicago, Ill., for defendant.

BIGGS, Circuit Judge.

■ The plaintiff, The Goldsmith Metal Lath Company, referred to hereinafter as Goldsmith, brought this suit pursuant to the Declaratory Judgment Act, Judicial Code section 274d, 28 U.S.C.A. § 400, seeking to have two patents, Holdsworth No. 2,105,770 and No. 2,150,061, adjudged invalid and for other relief. The defendant, Milcor Steel Company, hereinafter referred to as Milcor, filed a counterclaim alleging that Goldsmith had infringed both patents and sought damages. Milcor by virtue of certain assignments is the owner of the patents referred to. Patent No. —770 has seven claims. At the trial it was stipulated that claims 1 to 5 of this patent were not infringed by the structure submitted by Goldsmith for adjudication and that claims 6 and 7 are invalid in view of the decision of the Supreme Court in Milcor Steel Co. v. George A. Fuller Co., 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332. It follows that no justiciable controversy in respect to No. —770 remains between the parties. Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

We are concerned therefore only with issues relating to Holdsworth No. —061. The complaint prays this court to decide that Goldsmith does not infringe any of the five claims of the patent. By a counterclaim in the usual form Milcor has asserted that Goldsmith has infringed claims 1 to 4, inclusive. It was then stipulated by the parties that Milcor would rely at the trial only on claims 3 and 4. Three weeks before the trial Milcor served notice upon Goldsmith that it would rely also upon claims 1 and 2. Goldsmith contends that Milcor may not now change its position in this respect. It is not necessary to decide this question for reasons which will appear hereinafter.

■ Goldsmith asserts that the patent is invalid on several grounds which include the failure to disclaim an invalid claim, the asserted illegal extension of the monopoly of the patent to unpatented materials and Milcor's alleged bad faith by asserting infringement of certain structures not covered by the patent. I think it is unnecessary presently to consider these issues for I am of the opinion that the patent is invalid since it discloses no invention.

The patent, which is for a "Wall Construction", issued on March 7, 1939, on an application filed August 5, 1938. The disclosure relates to wall bases to be used in creating room walls or partitions. The specifications describes base members of slightly different types but in every instance designed to be nailed or otherwise fastened to a floor. It is not necessary to describe all the different designs illustrated by the figures of the patent and described in the specification. Reduced to simple terms Holdsworth structures consist of trimming or mop plates, connected together

to constitute the side-walls of the base, plus a means for holding in position the lower ends of vertical studs or uprights to which the metal lath for a plaster wall is to be fastened. The second figure of the patent shows two metal side-plates connected by transverse brackets which are fastened to the side-plates by spot welds. The parts of the brackets which separate the plates have secured to them rigidly a longitudinal metal strap or floor member which has spaced recesses to receive and to hold against substantial longitudinal movement the lower ends of studs or uprights. The 17th, 18th and 19th figures of the patent show a base made of a single piece of metal, a raised portion thereof taking the place of the metal runner, with holes cut therein to receive the ends of the studs. Figures 14 and 15 show a structure in which the studs merely rest on the top or horizontal web of a channel and may be connected to the channel base by means of clips. The specification states, "In every embodiment the entire base, including the base member with which the vertical columns interlock or on which the vertical columns rest * * * is prefabricated as a complete assembly at the factory. The strap * * * or * * * equivalent members * * * may be omitted without departing from the invention as long as the base has two longitudinal base members rigidly connected in spaced relation." It will be observed from this quotation what Holdsworth considered to be the gist of his disclosures.

Holdsworth makes small reference to the application of plaster or of finishing material to the wall or partition. Indeed, extended reference to the application of plaster or finishing material can scarcely be considered necessary in the ancient art of wall building.

Claims 2 and 4 of the patent are set out below.[1] It will be observed that the difference between them consists principally of a reference in Claim 4 to a plaster facing covering the studs, the facing being located between and above the longitudinal body members and exposing them. I deem this feature to be immaterial insofar as any question of validity of the patent is concerned.

■ An examination of the prior art shows how far it had progressed and how little Holdsworth contributed to it by the patent under consideration. The structure displayed by figure 14 of Goldsmith's Patent No. 2,235,761[2] is quite similar in essential respects to those illustrated by Holdsworth's figures 17 to 19 and described in his specification. Accepting the gist of Holdsworth's disclosures as set out by him in that portion of the specification of his patent last quoted in this opinion, the essential identity of the idea which animated both Holdsworth and Goldsmith is clearly apparent. The differences between their respective disclosures are comparatively small. For example, the foot of Goldsmith's stud is to be fastened into a shoe made by cutting and lifting straps of metal

---

[1] Claims 2 and 4 are as follows:

"2. A base for a wall or partition, said base comprising laterally spaced and longitudinal body members and connecting means rigidly connecting said body members in lateral spaced relation, said connecting means being integral with and being located below the tops of said body members, said connecting means having an upstanding wall-portion which is located intermediate and below the tops of said body members, the top of said upstanding wall-portion having openings which are shaped to receive upstanding studs, and to hold said studs against substantial longitudinal movement relative to said body members."

"4. A wall construction comprising laterally spaced longitudinal base members, longitudinally spaced lateral connecting members which are located intermediate said body members, said laterally spaced connecting members being rigidly connected to said body members to hold them in lateral spaced relation, a longitudinal member located intermediate said body members and held in fixed relation relative to said base members, said intermediate longitudinal member having recesses which are shaped longitudinally, upstanding studs having their bottom ends located in said recesses, the bottom ends of said studs being shaped to interfit with the walls of said recesses, plaster facing covering said studs, said plaster facing being located between and above said longitudinal body members and exposing said body members."

[2] Goldsmith's patent issued on March 18, 1941 on a divisional application, the original application being filed on March 2, 1938. Goldsmith is available to show that the patentee of the patent in suit was not the first inventor of any material part of the thing patented. See Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 401, 46 S.Ct. 324, 70 L.Ed. 651, and International Seal & K. Protector Co. v. E. J. Brooks Co., 3 Cir., 98 F.2d 647, 648.

from the base. It is probable also that Goldsmith did not intend plaster to be placed within the side-walls of the base member shown by drawings.[3] But both Holdsworth and Goldsmith disclose prefabricated metal structures in which there are base members having laterally spaced longitudinal members connected together in spaced relation. This is the substance of the disclosures of both. See the description of the structures of Holdsworth and Goldsmith in the opinion of the Court of Customs and Patent Appeals in Holdsworth v. Goldsmith, Cust. & Pat.App., 129 F.2d 571, 573, rendered in an appeal by Holdsworth from the decision of the Board of Appeals determining that Goldsmith was entitled to make the fifth claim of Holdsworth's patent.

█ Turning to the Peck patents, No. 2,052,033 and No. 2,057,204, issued in 1936, both for "Metallic Baseboard Construction", we see again that Holdsworth's—061 contributed little to the art.[4] Turning specifically to Peck No. —033 I think that it is clear that the principal difference between the disclosures of Peck and those of Holdsworth lies in the fact that Peck shows a tongue struck from the bottom of the baseboard to hold a channel post in a web position against the tongue and secured to it. Peck also has transverse bracing strips across the channel member. Peck's structure is more complicated than Holdsworth's and would be more difficult to build and to put in place, but simplicity in itself cannot constitute invention. The other patent to Peck, No. —204, discloses a metallic baseboard substantially similar in shape to that of Holdsworth. Peck's side flanges terminate in parallel rails and a saddle clip fits between these rails, being longitudinally adjustable to them and possessing an aperture which is adapted for receiving a wall post or stud. The difference between Peck and Holdsworth lies principally in the method of fixing or fastening the stud.

The patent to McNeil, No. 1,198,240, issued in 1934, shows a wall base comprised by the same combination of elements as Holdsworth's. McNeil's side-walls, however, are not to be fastened together at the factory but are to be assembled on the job. Assuming that Holdsworth is entitled to claim a prefabricated wall base, it would certainly not constitute invention to prefabricate the McNeil base by securing the

[3] It should be noted that Goldsmith was in interference with Holdsworth in the Patent Office. The Board of Appeals held that he was not entitled to make claims 1, 2, 3 and 4 of Holdsworth's patent, concluding as to claims 1 and 2 that Goldsmith's flanges did not constitute the equivalent of Holdsworth's upstanding studs and that the straps of Goldsmith's base were not adapted to receive studs; and concluding that as to claims 3 and 4 that while Holdsworth's base was designed to receive plaster Goldsmith's was not. The Board of Appeals held that Goldsmith was entitled to prevail as to count 3 of the issue, in short that he was entitled to make the fifth claim of Holdsworth's patent and thereby awarded him priority of invention in respect to the matter claimed by this claim. See Transcript of Record on Appeal, United States Court of Customs and Patent Appeals, Patent Appeal Docket No. 4593, Holdsworth v. Goldsmith, pp. 69–71. The decision of the Board of Appeals of the Patent Office was affirmed by the Court of Customs and Patent Appeals. See Holdsworth v. Goldsmith, 129 F.2d 571.

Milcor cites the rule of Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657, and relies upon it, but the doctrine is not applicable under the circumstances of the case at bar for this court has concerned itself only with the question as to whether the patent sub judice discloses invention. No issue concerning the issuance of a patent to Goldsmith is presently before me. It should also be pointed out that the rule of Morgan v. Daniels is not applicable except in a subsequent suit concerning the same subject matter between the same parties or their privies.

[4] The Peck patents were not considered by the Board of Appeals of the Patent Office in the interference between Goldsmith and Holdsworth because they were not part of the prior art of record in the patent file. See Rule No. 122 of the United States Patent Office providing inter alia as follows: "At a hearing on a motion to dissolve an interference between an application and a patent, the prior art of record in the patent file shall be referred to for the purpose of construing the issue." 35 U.S.C.A.Appendix. The Court of Customs and Patent Appeals in substance affirmed the refusal of the tribunals within the Patent Office to consider the Peck patents as " * * * the well-settled practice of the Patent Office * * * ". In resolving the interference the court did not consider the Peck patents.

side-walls to the connecting lateral members at the factory. Figure 3 of the patent to Cohan, No. 1,939,624, issued in 1933, for a "Partition Slab," shows an integral base with upstanding walls at the bottom between the two sides of the base. The addition of a stud-holding-opening in such a base would not require invention and indeed such a course is clearly suggested by the patent to Dawson, No. 1,102,883, issued July 7, 1914, as well as the patent to Holdsworth, No. 1,982,104, issued in 1934.

■ Assuming without deciding that Holdsworth is entitled to claim a prefabricated unitary base, a matter concerning which his claims are silent, I think the record demonstrates beyond any doubt that such prefabricated bases are old in the art. Holdsworth himself admitted it under cross-examination, albeit very reluctantly.[5] While it is a fact that Holdsworth's base is cheap to make, easy to transport, inexpensive to install and has met with considerable commercial success, none the less Holdsworth's disclosures do not constitute invention. The elements of his structure are old in themselves or consist of slight modifications of old structures, the latter being the product of mere mechanical ingenuity. The result which Holdsworth has achieved is not new or novel. Accordingly I hold the patent and its claims invalid for want of invention. Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795; Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 128 F.2d 380, 383-385; W. A. Baum Co., Inc., v. Becton, Dickinson & Co., Inc., 3 Cir., 101 F.2d 476; Rosenberg v. Shakeproof Lock Washer Co., 3 Cir., 100 F.2d 811; and Coolerator Co. v. Martocello, 3 Cir., 99 F.2d 58.

■ Goldsmith has prayed for damages. In view of the provisions of Section 274d and in particular those of subparagraph (2) thereof such relief may be granted only subsequent to the entry of a declaratory judgment. See Ferry-Hallock Co., v. Frost, D.C., 33 F.Supp. 27, 31, 32.

A final decree may be submitted.

Findings of fact and conclusions of law are filed with this opinion in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

District Court, S. D. New York.
Nov. 11, 1943.

[5] See Record, pp. 328-331.