## BALL *v.* LANGLES.

1. Reissued letters-patent No. 4026, granted June 14, 1870, to Hosea Ball for a new and useful improvement in ovens, are void, inasmuch as they contain new matter, and are for an invention different from that exhibited in the original specification and drawings.
2. The ruling in *Seymour* v. *Osborne* (11 Wall. 516) and *Russell* v. *Dodge* (93 U. S. 460), touching the authority of the Commissioner of Patents in granting a reissue of letters-patent, reaffirmed.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. Thomas J. Durant* and *Mr. Charles W. Hornor* for the appellants.

*Mr. Conway Robinson* and *Mr. Leigh Robinson*, contra.

MR. JUSTICE STRONG delivered the opinion of the court.

This is a bill in equity filed by Hosea Ball and Margaret Haughery, against Justin Langles and N. A. Baumgarden, composing the firm of Baumgarden & Langles. It charges an infringement by the defendants of reissued letters-patent granted to Ball, June 14, 1870, for an alleged new and useful improvement in ovens. The original patent was granted to him on the 23d of September, 1856, for a period of fourteen years from that date. On the 12th of October, 1869, this

original was surrendered, and a reissue was granted. A second reissue was granted on the 14th of June, 1870, numbered 4026. Subsequently an extension of the patent was granted for seven years, from Sept. 23, 1870. It is upon the second reissue (No. 4026), thus extended, that this suit is founded. The charge of the bill is, that the defendants have constructed such an oven as that patented, with intent to use it. The Circuit Court dismissed the bill, and from that decree the complainants have appealed.

The first question now to be considered under the pleadings and evidence is, whether the reissued patent (No. 4026) is valid. One of the defences set up by the answer is, that the reissue is not for the same invention as that described, claimed, and shown in the original letters, and it is averred that the surrender of those letters and the first reissue were for the purpose of introducing new matter not shown, suggested, or indicated in the specification, drawings, or model filed with the original application, and also for the purpose of obtaining a claim broader than the invention, and broad enough to cover the invention of subsequent inventors and patentees. If these averments of the answer are well founded the reissue is void, and it will be unnecessary to consider the other defences set up.

When the reissues of 1869 and 1870 were granted, the Commissioner of Patents had authority under the acts of Congress to grant reissues only in certain specified cases. These were whenever a patent was inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee's claiming as his own invention or discovery more than he had a right to claim as new, if the error had arisen by inadvertence, accident, or mistake, without any fraudulent or deceptive intention. The commissioner was invested with authority to determine whether the surrendered patent was valid by reason of a defective or insufficient specification, or because the patentee had claimed more than he had a right to claim as new; and if he found such to be the case, and found also that the error had been due to inadvertence, accident, or mistake, without fraud, his decision was conclusive, and not subject to review by the courts. But the law did not confer upon him jurisdic-

tion to grant a reissue embracing new matter, or a broader invention than what was revealed by the original specification, or drawings or models, except in some cases where there was neither model nor drawing. A reissue for anything more is, therefore, inoperative and void. Accordingly, this court has repeatedly held that if, on comparing a reissue with its original, the former appears on its face to be for a different invention from that described or indicated in the latter, it must be declared invalid. *Seymour* v. *Osborne*, 11 Wall. 516, 544; *Russell* v. *Dodge*, 93 U. S. 460.

In the original patent, Ball described his invention as consisting of an oven with a series of bread-receivers swung between the ends of a reel hung in an interior perforated chamber, and capable of rotation on a horizontal shaft; an arrangement being provided for the self-delivery of the bread from the front of the oven, as afterwards set forth. Having thus described it generally, he proceeded to set forth in detail its construction, including the mode in which it was heated. This was done in part by explanation of his drawings. A fire-chamber was represented below the oven, with an ash-pit beneath. Above the fire-chamber, but beneath the oven, a space through which the products of combustion passed on their way to the chimney, communicating by openings with the vertical side and back flues. These flues were exterior to the oven proper, but they communicated with the interior chamber or oven by perforations or openings. In this interior chamber the bread was placed on platforms hung on a revolving reel, and a mode of discharge and filling was described. The specification then stated that, "owing to the perforated sides and back of the interior chamber, all parts of it receive the full heat of the oven, suitable dampers regulating the course of the products of combustion to the chimney." Such was the description, so far as it is necessary to state it. The single claim of the patent was as follows: "What I claim and desire to secure by letters-patent is the perforated interior chamber, in combination with the rotary reel and the swinging platform thereon, self-discharging, substantially as set forth."

It is evident from this description and from the attendant drawings that the interior chamber or oven was so constructed,

that what are called "the products of combustion" did not and could not pass directly into it. The chamber was heated by those products passing through the exterior flues on the sides and back. There was no direct communication between the space above the fire-chamber and the interior of the oven, and no communication at all except indirectly through the perforations in the vertical flues on the sides and back of the oven. The interior chamber was heated for baking by heat radiating from its walls, except the comparatively small quantity which was permitted to enter through the small perforations in the flues. It is impossible to detect in the specification or drawings any intention or hint even of conducting the products of combustion (whatever may have been meant by the phrase, whether heat, gases, or smoke, or all of them) directly into the baking-chamber. Not a single ray of heat could enter the chamber, radiated from the fire. No passage was provided through the bottom, and even the perforations in the sides must have been ineffectual to divert the ascending heat from its upward course through the flues.

If, now, we turn to the reissues of 1869 and 1870, it cannot be doubted that while they claim what was claimed in the original, they claim much more. They claim an entirely different mode of heating the chamber, necessitating a radical difference in the construction of the oven.

The specification of the reissue of 1870, as well as that of 1869, instead of representing the space above the fire-chamber as communicating with the interior chamber only indirectly through perforations in the vertical and back flues, described it as communicating "directly or indirectly in any proper manner with the chamber in which the bread-receiving shelves or platforms are revolved." The patentee says, "The flues and openings to permit the passage or circulation of gases into or through the bread-chamber may be located and arranged in any effective manner." Thus the flues and openings may be made through the bottom of the oven and immediately over the fire, admitting direct radiation from the fire-chamber. And he claims "one or more swinging bread-holders, suspended from the arms or end plates of a rotating reel in combination with a furnace so arranged and connected that the products of

combustion will pass into or through the chamber within which the bread-holders move." Thus his reissued patent has become one for an oven in which there may be no diaphragm or partition separating the compartment in which the dough is placed from the furnace by which it is heated, and which may be directly under it. Thus the oven is made a part of the passage-way for the products of combustion from the fire-chamber to the chimney. That this is a very different invention from anything exhibited in the original specification and drawings is too obvious to need further elucidation. We cannot doubt that the purpose of the reissues was not to cure defects in the original specification, or any deficiency in describing the invention, but to cover other devices which the patentee had not in mind when he first applied for his patent, and which may have subsequently come to his knowledge. Thirteen years after the patent was granted had elapsed before he applied for any reissue. However this may be, the reissued letters are so clearly for a different invention from that for which the patentee first applied, containing new matter, and so much broader, that we are constrained to hold that the Commissioner of Patents had no authority to grant them, and consequently that they are void.

The complainants' bill was, therefore, rightly dismissed.

*Decree affirmed.*