## UNITED ADVERTISING CORPORATION OF TEXAS v. STIMSON et al.
### No. 8183.

Circuit Court of Appeals, Fifth Circuit.

April 17, 1937.

Rehearing Denied May 18, 1937.

J. Hart Willis, of Dallas, Tex., Geo. L. Wilkinson, of Chicago, Ill., and Edward H. Cumpston, of Rochester, N. Y., for appellant.

John H. Bruninga, of St. Louis, Mo., and Robert B. Holland, of Dallas, Tex., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is an appeal from an interlocutory decree sustaining the validity, as to claims 2, 3, 12, and 13, of letters patent of the United States, Re No. 18,166 reissued August 25, 1931, to Jonathan Stimson for improvements in luminous display or reflector signs. The appellees, Stimson and American Gas Accumulator Company, were decreed to be the owners of said patent and the exclusive licensees thereunder, respectively. The appellant, United Advertising Corporation of Texas, was adjudged to have infringed said four claims by the manufacture and installation of signs employing reflector units not manufactured or licensed by appellees. A permanent writ of injunction was issued restraining further infringement, and a master was appointed by the court to assess the damages sustained by appellees.

Claim 2 of the patent in suit refers to a light source and luminous sign made of letters displayed by means of a reflecting area, composed of a series of reflecting units arranged in a contiguous relation, and constructed and positioned to cause a definite spread of the reflected light and to confine it to a selected field. Claim 3 is identical with claim 2, except therein it is specified that each of the reflecting units shall be so constructed as to cause a definite beam-spread of uniform intensity, the composite beam from all the units being confined within the selected field. Claim 12 refers to a reflecting sign in which the characters are outlined with units of reflecting areas adapted to reflect incident light from a distant source in the general direction of its origin with a slight spread of the reflected light. Claim 13 is the same as claim 12, except that the sign is described as having reflecting units arranged along the strokes of the characters.

Nowhere in the patent is there a description of the reflecting area or of the reflecting units, nor is there any direction as to how such reflection is to be accomplished. In the drawings accompanying the application, illustrations are given which disclose that the patentee contemplated the use of pressed or molded glass plates made up of cube-cornered prisms. These plates are known to give the effect of a multiplicity of contiguous triple reflector units. The sign which it is alleged infringes the patent is made up of multiple lens-mirror buttons, also known to have a retroreflective effect on the light falling within their range of operation.

An ideal triple reflector would be made up of three triangular plane mirrors so shaped and placed that each would be at right angles to the other, forming a prism having a front or base which would make an equilateral triangle. In addition to the base, this prism would have three triangular sides, each with a right angle at its apex and 45 degree angles at its base. When a ray of light traveling toward the base of the prism, in a line of not too great deviation from the perpendicular thereto, would strike one of the plane mirrors, its reflection being in accordance with the rule that the angle of reflection is equal to the angle of incidence, it would be reflected to a second mirror, thence to a third, thence back to its source, much the same as if it had encountered a single plane mirror perpendicular to the ray and of a size and shape equal to the projection of the triangular base on a plane perpendicular to the course of the light. This is because each of the three reflectors, being set in a different plane, and all being at angles with any plane passing through the line of direction in which the light travels, would reflect the light at angles which, when projected on any plane passing through the line of light, would total 180 degrees.

However, it is elementary that unrefracted light does not travel in parallel lines, but that every beam is traveling with a definite spread which is in proportion to the square of the distance from its source. It is also known that a plane reflector does not interrupt this spread, but simply changes its direction, so that if the direction of reflection is opposite to the direction of radiation, the light from a single point will have spread over an area with dimensions twice those of the mirror when it returns to its source. It is also known that visible light does not radiate from a single point but, in every instance, comes from an infinite number of points or a radiant surface. Hence, if the radiant surface is equal in size and shape to the mirror, the reflected light returns to its source in a beam of equal intensity over an area equal to that of the radiant surface, outside of, and immediately surrounding which, there is an illuminated area of diminishing intensity beginning with that of the inclosed area and disappearing altogether when its outside dimensions are three times as great.

The lens mirror used by appellants does not embody any of the characteristics of the triple reflector. In principle, it focuses the beam of incident light by lens refraction, so that it is brought together at a point on a concave mirror so curved as to have its tangent at the point of reflection perpendicular to the axis of the cone of refracted light. This causes reflection of a cone of identical dimensions, but in which the rays of light have been reversed in their positions. Passing out through the same lens, they are again arranged in substantially the same relation as when they entered. In practice, with corrections for spherical and chromatic aberrations, and a slight deviation from a true focus, the lens mirror button produces a luminous area of uniform intensity with a light spread much greater than that of the incident light. It makes no difference whether the mirror be ahead of the focus or behind it, or whether the light converges in front of the lens, or scatters on leaving it; so long as the rays are not parallel, or nearly so, the reflected light is spread over a field the size of which is determined by the curvature of the lens and mirror, or their relationship to each other.

In the devices used by both appellant and appellees, manufacturing inaccuracies play an important part. In pressed or molded cube prism plate glass, bulges and ridges occur in the surface of the cube faces, or the same condition may result from irregular contraction while cooling. These irregularities are relied upon by appellees to produce a spread in the light. However, another spread occurs because of unavoidable deviations from right angles on the edges of the cubes. A deviation in one angle results in a beam of reflected light which splits into two parts. Two inaccurate angles produce four beams, and three produce six. If the angles could be made accurately, a larger reflecting unit would produce a proportionately larger illuminating beam and beam-spread; but the angles cannot be made perfect, and the resulting split in the light produces dark spots which are the same size as the inaccurate units. Therefore, appellees use a multiplicity of small units in an effort to produce an area from which the reflected light from one unit overlaps that of another, and on which the dark spot resulting from an inaccurately formed cube corner will be as small as possible. The lens mirror button would be useless if it produced a perfect focus upon a correspondingly perfect mirror with perfect corrections for aberrations. Hence, it is manufactured within certain limits of tolerance to produce the desired spread of light. With the irregular cube faces to produce the spread, cube-cornered glass cannot be manufactured with sufficient accuracy to prevent dark spots in the field.

The assignments of error which we think are well taken are based upon invalidity for want of novelty, lack of invention, and failure to disclose the means which would enable one skilled in the art to produce the result. A statement of our conclusions with reference to these assignments will render it unnecessary to discuss the charge of infringement.

Appellees admitted of record below, and in the argument here, that both the lens mirror used by appellant and the triple reflecting units disclosed by the Stimson patent were old, and that it was the combination which they claimed to be patentable. These admissions are in accord with the proof of appellant upon the subject of prior art; and, since the reflecting prism means of the patent and the lens mirror button used by appellant were devoid of such novelty, the use of such old reflecting means in the old combination of sign characters and reflectors did not produce any new function or result, and was lacking in patentable novelty or invention.

Appellees rely upon a controlled and narrowly confined beam spread as a novel improvement upon all prior inventions in the art. Conceding that such a contribution would have been valuable, we do not find the means for producing the result disclosed by the claims of the patent. It is said that Stimson wanted a narrow spread to confine and concentrate the light in the useful field where the public traveling on the highway was going to view his sign; that he wanted to confine the beam spread so as to get a more brilliant illumination within a more limited field. If this was what he had in mind, he failed to describe the means of its accomplishment in either the claims or specifications. Therefore, he has not paid the price of patent protection. Beidler v. United States, 253 U.S. 447, 40 S.Ct. 564, 64 L.Ed. 1006; Permutit Co. v. Graver Corporation, 284 U.S. 52, 53, 60, 52 S.Ct. 53, 55, 76 L.Ed. 163.

In claims 2 and 3, a light source in front of the sign is mentioned. Nothing is said concerning the direction of the reflected light, except that it shall be to a selected

field. These claims would be satisfied by a reflector which illuminated the selected field with light originating outside the field, which function neither the triple reflector nor the lens mirror button would perform. In claims 12 and 13, the reflection is to be "back in the general direction of" the light from a distant source. Here, again, there is no requirement that the light source be within the selected field. It cannot be said that these claims embrace light from any source. Should such an invention be perfected, it would not bear on the patent in suit, since the only feature that the two would have in common would be that when the source of light falling upon the latter device was within the selected field, it would be reflected in that general direction. To allow the patent in suit to cover this common feature would be to allow a patent upon a result, rather than upon an art, machine, manufacture, or composition.

It is well established that a mere result cannot be patented. General Electric Co. v. Sundh Electric Co. (C.C.A.) 251 F. 283; Hale Manufacturing Co. v. Hafleigh & Co. (C.C.A.) 52 F.(2d) 714. Likewise, the reflection of light from a distant source, or from a given source, into a restricted field is a mere function or result. Whether the means of producing this result would furnish a recognizable claim for patentability need not be considered by us, since the patent here in suit does not disclose the means, which, according to Stimson's testimony, were necessary for a reflecting sign. He says: "I was after a more narrowly confined beam spread all the time." He describes his attempt to secure this "by means of greater accuracy in the molded structure," and claims to have worked out a sectional type of mold which could not be made in the average glass mold-making shop. From December, 1922, to March, 1923, he was working to confine the beam spread in order to get a more brilliant illumination. It cannot be claimed that the means were obvious to one skilled in the art, because the method of controlling the beam spread is the essence of the invention claimed. To say it was obvious to the ordinary workman is to say there was no invention, only an aggregation of old elements. Stimson admits that a reflected beam with no spread is not within the patent, but he refused in his testimony accurately to define a narrow beam, and he failed to teach the public both how to practice the art and how to avoid infringement. In a sentence, what the patentee

declared in claims 2, 3, 12, and 13 to be his invention is clearly shown to have been anticipated by the prior art, and what appellees now assert to be the invention is not disclosed by the patent in suit. It follows that the claims relied upon to support the decree appealed from are invalid.

For the reasons given, the decree of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.