**CRIDLEBAUGH v. RUDOLPH.**

No. 7904.

Circuit Court of Appeals, Third Circuit.

Argued May 6, 1942.

Decided Nov. 20, 1942.

William S. Hodges, of Washington, D. C. (A. Millard Taylor, of Camden, N. J., on the brief), for appellant.

Richard J. Cook, of Seattle, Wash. (Boyle & Archer, and Frederick P. Greiner,

all of Camden, N. J., on the brief), for appellee.

Before BIGGS, JONES and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The plaintiff sued to restrain the defendant's alleged infringement of certain patents and, further, to redress other injury said to have been inflicted by the defendant. To the extent that the case is one arising under the patent laws of the United States, the District Court's jurisdiction is invoked upon that basis.

The additional causes of action averred by the complaint are for the defendant's alleged infringement of a common law trade-mark of the plaintiff and for the defendant's alleged unfair competition. Jurisdiction of each of these causes is expressly predicated upon the diversity of the citizenship of the parties.

The defendant's answer, in addition to traversing the complaint in respect of the causes of action therein set forth, pleads a counterclaim for damages for an alleged libel of the defendant by the plaintiff. Here, also, the court's jurisdiction is laid upon diversity of citizenship.

Upon a trial of the issues, the District Court held the patents in suit valid and infringed by the defendant in the particulars charged; that the defendant had also infringed the plaintiff's common law trade-mark; and that the manner of the defendant's advertising and marketing of his product constituted unfair competition. The trial court accordingly entered the decree now appealed from, which includes a dismissal of the defendant's counterclaim.

The patent infringements averred in the complaint and found by the court below involve only three of the eleven claims of Patent No. 19,562, being a reissue to one Jacob Jones on May 7, 1935, and whereof the plaintiff is the owner, and one of the six claims of the Cridlebaugh Patent No. 2,079,107 issued to the plaintiff on May 4, 1937, for an improvement in Jones' alleged invention. The devices covered by the patents relate to masks or blinders to be secured upon the beaks of fowls for the purpose of preventing them, by obstructing their forward vision, from picking the feathers or flesh of other fowls,—a destructive practice prevalent under certain conditions and known as "cannibalism". However, in the view we take of the patents it becomes unnecessary to deal with specific claims. For reasons which will hereinafter appear, it is our opinion that both patents are invalid and, therefore, incapable of supporting a charge of infringement with respect to any of their claims.

The Jones device consists of two metal plate members which, in flat extension to each other, are pivoted together by an eye rivet at their upper and inside portions. The lower inside portions of the plates are cut away so as to straddle the beak of a fowl when the plates are placed on the beak in an upright position. Extending rearwardly from the cut-out portions of the plates are lugs designed to lie along and against the beak on either side. Each lug is pierced with a hole, the two holes being in alignment. A pin to secure the device to the beak of a fowl is inserted in the hole of one lug, then passed through the breather openings in the beak, and finally through the hole of the opposite lug. Above the lugs an elastic member is attached transversely from one plate to the other to induce the plates toward each other at the lugs and thus, by the pressure of the lugs against the beak, to maintain the mask in an upright position on the beak. The protruding end of the pin is bent over to hold the pin in place.

Jones first manufactured and marketed a mask or blinder device and then made his original application for a patent. Cridlebaugh, after learning of the Jones device and after having examined it, acquired a 49% interest in it prior to the grant of the original patent to Jones. Subsequently, Cridlebaugh became and now is the sole owner of the Jones patent. In the course of Cridlebaugh's investigation prior to the grant of the original Jones patent, he became convinced that broader claims should be applied for and so informed Jones. Nothing however was done in that regard until a month after the grant of the original patent when application for the reissue was made at Cridlebaugh's suggestion. What the reissue application served to inject was the matter whose omission from the original application had been the subject of discussion and consideration between Cridlebaugh and Jones prior to the grant of the original patent. In view of the facts just recited, which appear from the plaintiff's own testimony (Appellee's Brief, p. 10; Appendix, pp. 68a, 69a), it is indeed difficult to see how Jones was in position to make the requisite oath to a re-

issue application, viz., that the matter omitted from the original application was omitted therefrom through "inadvertence, accident, or mistake", etc. We recently had occasion to appraise the fatal inefficacy of an oath to a reissue application where, by reason of the admitted or undisputed circumstances, it could not justifiably be asserted that the alleged omission from the original patent application was the result of inadvertence, accident, or mistake. See General Radio Co. v. Allen B. DuMont Laboratories, Inc., 3 Cir., 129 F.2d 608, 611.

But, beyond that, the reissue application in this case specifies merely a functional operation for the pin or securing member which the original application not only did not contemplate but in reality negatived. The intent and effect of the added paragraph of specification [1] in the reissue application was to import to the pin or securing member a pivotal function in the rotation of the pin from the tipping of the top of the mask forwards or backwards due to the movement of the fowl's head, thereby causing removal of the dust and dirt which would otherwise collect on the pin where it enters and leaves the breather openings in the beak. Of the new claims of the reissue patent here involved (Nos. 5, 7 and 8), [2] each defines such pivotal function for the pin or securing member; and it is that function upon which the plaintiff relies especially for invention and as support for his charge of infringement. But, even if the claims could be considered as being for something other than a function, the original Jones application, quite understandably, neither specified nor claimed rotary action for the securing member.

Concededly, the specifications and claims of Jones' original application did refer to a pivot, but it was not the pivot furnished by the pin or securing member. The pivot originally referred to was the hinge effect of the eye rivet which fastened the two plates together. The purpose, as well as the function, of that pivot was to allow the plates to be expanded at the bot-

---

[1] "The pin or securing member 17 also serves as a pivot upon which the mask may swing and which is of especial advantage in the event the mask or guard 10 should become caught on any obstruction. Under such condition the mask or guard 10 will readily swing forward as the fowl endeavors to effect a release. As the mask or guard 10 swings forwardly the contact of the opposed edges of the plates 11 and 12 and above the lugs 15 with the upper surface of the beak of the fowl will result in an outward swinging movement of the plates 11 and 12 placing the member 18 under such tension that when the mask or guard is released from the stress or strain effecting the downward swinging movement of the mask or guard, the retraction of the member 18 will pull the plates 11 and 12 inwardly and against the beak of the fowl with the result that the mask or guard 10 will be automatically swung back to its normal position as illustrated in Figure 1 of the drawing. It is also this pressure of the opposed edges of the plates 11 and 12 upon the beak B that maintains the guard or mask in its normal position. In practice, the location of the band 18 is such that when the mask or guard is swung forwardly and downwardly from its normal position the central part of the member 18 contacts with or rests upon the upper surface of the beak and remains stationary, the increasing tension of the member 18 being from said point in opposite directions from the beak. The member 18 allows a relatively outward swinging movement of the plates 11 and 12 sufficient to permit the mask or guard 10 to be swung forwardly and downwardly a considerable distance."

[2] Claims 5, 7 and 8 of the reissue patent are as follows:

"5. A mask for fowls comprising a member to straddle the beak of a fowl with the member normally extending upwardly from the beak, said member having portions to lap the side portions of the beak at the rear part thereof, and a member extending through said lapped portions and the beak of the fowl to pivot the device to the beak.

"7. A mask for fowls comprising a member to be positioned upon the beak of a fowl with the member normally extending upwardly from the beak, and a pivot member engaged with the first named member and passing through the beak of the fowl to hold the member in place upon the beak and to allow the member to have swinging movement.

"8. A mask for fowls comprising a member to be positioned upon the beak of a fowl and normally extending upwardly therefrom, said member having portions to lap the side portions of the beak at the rear part thereof, and a pivot member extending through said lapped portions and the beak of the fowl."

tom for placing the mask upon the beak of a fowl and then to allow them to be drawn together by the tension of the elastic member, thus causing the lugs to press firmly on either side of the beak in actual opposition or resistance to any pivotal action of the pin or securing member. The present is not a case of including in the reissue application something inherent or incidental to the device originally disclosed. It is precisely the opposite and is an attempt to include an idea antagonistic to the disclosure of the original application. Manifestly, therefore, the reissue seeks to cover with patent protection a claim which was no intended part of the original specifications. And that, the statute does not permit.

The reissue of patents is authorized by R.S. § 4916, 35 U.S.C.A. § 64, which, as amended, provides in part as follows: "Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, * * * if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent * * * cause a patent for the same invention, * * * to be reissued * * *; but no new matter shall be introduced into the specification, * * *."

■■ Patent Office decisions relevant to the existence of grounds for a reissue, when based on disputed questions of fact, are of course conclusive. But where it is apparent from the face of the records that no ground for reissue existed, the courts may so rule as a matter of law. Yale Lock Manufacturing Company v. Berkshire National Bank, 135 U.S. 342, 378, 379, 10 S. Ct. 884, 34 L.Ed. 168; Smith v. Goodyear Dental Vulcanite Company, 93 U.S. 486, 499, 23 L.Ed. 952; Seymour v. Osborne, 11 Wall. 516, 78 U.S. 516, 543, 544, 20 L.Ed. 33; Burr v. Duryee, 1 Wall. 531, 68 U.S. 531, 571, 17 L.Ed. 650. See, also, general discussion 2 Walker on Patents (Deller's Ed.) § 326. Whether the original patent was "wholly or partly inoperative or invalid" and whether the reissue is for the

"same invention" are matters for the court to determine upon examination of the original and the reissue patents. In James v. Campbell, 104 U.S. 356, 370, 26 L.Ed. 786, 791, the Supreme Court said that "When a patent fully and clearly, without ambiguity or obscurity, describes and claims a specific invention, complete in itself, so that it cannot be said to be inoperative or invalid by reason of a defective or insufficient specification, a reissue cannot be had for the purpose of expanding and generalizing the claim so as to make it embrace an invention not described and specified in the original." See, also, Corbin Cabinet Lock Company v. Eagle Lock Company, 150 U.S. 38, 42, 43, 14 S.Ct. 28, 37 L.Ed. 989; Russell v. Dodge, 93 U.S. 460, 463, 464, 23 L.Ed. 973. The exaction of the requirement that an original patent and a reissue must cover one and the same invention was clearly indicated in the recent case of United States Industrial Chemicals, Inc., v. Carbide & Carbon Chemicals Corp., 315 U.S. 668, 676, 62 S.Ct. 839, 843, 86 L.Ed. 1105. There Mr. Justice Roberts said that "If there be failure of disclosure in the original patent of matter claimed in the reissue, it will not aid the patentee that the new matter covered by the reissue was within his knowledge when he applied for his original patent. And it is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification. It must appear from the face of the instrument that what is covered by the reissue was intended to have been covered and secured by the original." It follows therefore that the reissue patent here involved is invalid.

■■ The Cridlebaugh patent (No. 2,079,107), only claim 2 whereof was put in issue,[3] is equally invalid. The device covered by that patent consists of a single piece of flat metal shaped into two spaced apart wings joined by an arcuately shaped band of the metal with lugs extending rearwardly from the inner portions of the wings or plates and so positioned as to lie against the sides of the beak of a fowl.

---

3 "2. A guard for the purpose set forth comprising a single piece of metal shaped into two spaced apart wings adapted in applied position to be disposed one on either side of the beak of a fowl and having a size sufficient to constitute blinders, each wing having a forwardly bent outer edge and an adjustable normally rigid connecting and supporting bar connecting said wings over the beak of the fowl, and means for securing the guard to the beak with its wings substantially at right angles to the fowl's line of vision."

The lugs are provided with aligned holes through which (and the breather openings in the beak of a fowl) a pin is placed to secure the device to the beak just as in the Jones device. As to Cridlebaugh, the Jones patents (original and reissue) constituted prior art. That such prior art anticipated Cridlebaugh's conception, he plainly conceded when he testified that "Jones in his device has the real invention" and admitted that all of the functional relationships disclosed in the Jones device are present in his (Cridlebaugh's) subsequent device. (Appendix, p. 36a.)

Even before Jones, the prior art anticipated his device as well as Cridlebaugh's. While the defendant at trial made reference to the art as it existed prior to Jones, he studiously refrained from citing it as anticipation. The reason for his so doing is not hard to perceive. The defendant's patent (No. 2,181,070) granted November 21, 1939, and under which he manufactured and sold his accused device, is so similar in principle to the Jones and Cridlebaugh devices that he undoubtedly hesitated to assail the Jones and Cridlebaugh patents on the ground of anticipation lest he, at the same time, impugn his own patent. But the fact that the defending party to an infringement suit seeks to obviate the question of patentability of the disclosure involved does not exclude that issue. It inheres none the less in the charge of infringement. In such instance the parties are powerless to foreclose the court from determining whether the patent does in fact cover invention. The duty to protect the public from the imposition of an unwarranted monopoly requires no less. See Densmore v. Scofield, 102 U.S. 375, 378, 26 L.Ed. 214.

■ The "invention", according to Cridlebaugh, resided in the "blinders which obstruct the fowl's vision directly ahead so that it can't see to pick and still allows it to see beneath it, sleep and eat and drink, and the pin or securing member which secures the device to the fowl's beak." (Appendix, pp. 54a, 55a.) Such indeed was the embrace of the Jones and Cridlebaugh patents. Fundamentally, the principle involved is a means for obstructing or retarding an animal's natural exercise of its voluntary or sensory faculties by a mechanical blinder or baffle fastened to the head of the animal with a pin or securing member passed through the animal's nasal organ or passages. That idea was known and practiced long before Jones. The Straut patent (No. 297,870) of 1884 for a calf-weaner disclosed such a baffle and fastening, as did also the Seay patent (No. 662,471) of 1900, likewise for a calf-weaner. The use of the breather openings (described as "nostrils") in the beak of a fowl for the attachment of a mechanical object to prevent feather picking by obstructing complete closure of the fowl's mandibles without interfering with its eating or drinking had been shown by the Schild patent (No. 546,905) of 1895. We fail to see wherein the design or construction of Jones' device, and by the same token Cridlebaugh's, required anything more than an 'exercise of' mechanical skill in applying the teachings of the known art. No new element or idea is disclosed by the devices covered by the patents in suit. Therein they fail to present the novelty required for invention, the absence of which automatically denies patentability. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 29 L.Ed. 76; Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 27 L.Ed. 438. With the invalidity of the patents in suit thus determined, they are perforce incapable of supporting the charges of infringement.

■ Both the claim for alleged trademark infringement and the claim for unfair competition grow out of the defendant's use of the word "Goggles" as a name for its manufacture. The plaintiff's trademark to which it lays claim by virtue of alleged common law right consists of the word "Specs". As jurisdiction of these claims rests upon diversity of citizenship, the rights of the parties in respect thereto are to be determined according to local law. Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., 315 U.S. 666, 667, 62 S.Ct. 853, 86 L.Ed. 1103. In this instance, the applicable local law is the law of New Jersey (the place of the alleged wrong). It so happens that the federal law and the law of New Jersey are to the same effect as to matters such as are now under consideration. Moreover, no contention is made that the local law is any different from the general law on the particular subjects and both parties to the instant suit have relied almost entirely on federal decisions. Cf. Kellogg Company v. National Biscuit Company, 305 U.S. 111, 113, footnote 1, 59 S.Ct. 109, 83 L.Ed. 73. The plaintiff also registered the word "Specs" as a trademark with the Patent Office under

the provisions of the Trade-Mark Act of 1905, § 1, as amended, 15 U.S.C.A. § 81, but no complaint is made on that score, so that the controlling law continues to be as already indicated. See Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., loc. cit. supra.

The purpose of a trademark is to indicate the origin or ownership of the particular goods to which it is affixed. Elgin National Watch Company v. Illinois Watch Case Company, 179 U.S. 665, 673, 21 S.Ct. 270, 45 S.Ct. 365. Inasmuch as the meaning of a descriptive word cannot be so delimited as to describe merely the origin or ownership of the goods of a particular manufacturer, no one can acquire the exclusive right to the use of such a word as a trade-mark. Canal Company v. Clark, 13 Wall. 311, 80 U.S. 311, 323, 20 L.Ed. 581. In short, a mark which is not more than descriptive is not a valid trade-mark at common law. William R. Warner & Company v. Eli Lilly & Company, 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161; New York & New Jersey Lubricant Co. v. O. W. Young, Err. & App., 84 N.J.Eq. 469, 470, 94 A. 570; Mississippi Wire Glass Co. v. Continuous Glass Press Co., Ch., 79 N.J. Eq. 277, 279, 81 A. 374; Restatement, Torts (1938) § 721. Nor may the word, being merely descriptive, be said to acquire a preemptive secondary meaning. Mississippi Wire Glass Co. v. Continuous Glass Press Co., loc. cit. supra. In this case the word "Specs" is but a figurative description of the plaintiff's articles of manufacture and does not grow out of either the origin or ownership of the goods. The designation, therefore, does not entitle the plaintiff to the exclusive use of the word or its synonyms.

And, even if "Specs" were a valid trade-mark, the right of the plaintiff would extend no further than to protection against the unfair use of a similar trademark by a competitor who seeks thereby to palm off his goods as those of the plaintiff. The rule as laid down by the Supreme Court and as applied in New Jersey is that no trader can adopt a trade-mark, so resembling that of another trader that ordinary customers, buying with usual caution, are likely to be misled. McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828; A. Hollander & Son, Inc., v. Philip A. Singer & Brother, Inc., Ch., 119 N.J.Eq. 52, 59, 180 A. 671, affirmed Err. & App., 120 N.J.Eq. 76, 183 A. 296. The test is whether the public is likely to be deceived by the alleged infringing name. Rosenthal v. Blatt, Ch., 80 N.J.Eq. 90, 93, 83 A. 387. And the burden is on the one complaining to show by a fair preponderance of the evidence that the ordinary run of purchasers, giving that attention which such persons usually give to the buying of articles of the character involved, would likely be deceived. The only evidence adduced by the plaintiff in this case to show confusion of purchasers was three letters addressed to his company in which the term "goggles" was used to describe the device about which inquiry was being made. Certainly there is no similarity in the spelling or sound of the words "Specs" and "Goggles"; and the meager instances of confusion to which the plaintiff points are more properly attributable to carelessness or inattention on the part of the inquirers rather than to the conduct of the competitor. Rosenthal v. Blatt, loc. cit. supra. In our opinion, the plaintiff failed to make out a case by a fair preponderance of the evidence either as to confusion of the buying public or deception by the defendant.

Likewise, the failure to establish a case of trade-mark infringement is fatal to the plaintiff's claim of unfair competition for the latter is based entirely upon the defendant's use of the word "Goggles".

The learned trial judge, having found the patents in suit valid and infringed by the defendant, dismissed the defendant's counterclaim without adjudicating its merits or the merits of the defenses thereto raised by the plaintiff. It was the trial court's opinion that the counterclaim "would be important only in the event that plaintiff failed to establish a valid patent and infringement". Since it is our conclusion that the patents in suit are invalid, and therefore incapable of supporting a charge of infringement, the counterclaim recurs as appropriate matter for hearing and adjudication. While the basis of the counterclaim is fairly indicated in one of the trial court's findings of fact, no findings or conclusions were made with respect to the defamatory character of the plaintiff's statements or the efficacy of the defenses which the plaintiff interposed. Nor did the trial court determine the place of the alleged tort or the controlling law, as to which the rule of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is directly pertinent. The counterclaim remains

therefore a matter for the District Court's hearing and determination.

The decree of the District Court is reversed and the cause remanded for further proceedings in conformity with this opinion.