DANIEL et al. v. O. & M.
MFG. CO. et al.
Civ. A. No. 4077.

United States District Court
S. D. Texas, Houston Division.
May 8, 1952.

Hardway, Harwell, Gwin & Meyers, of Houston, Tex., for plaintiffs, Palo R. Daniel and Palo R. Daniel, Jr.

Andrews, Kurth, Campbell & Bradley, Jack W. Hayden, of Houston, Tex., for defendants O. & M. Mfg. Co. and Hoy Owen.

James L. Abney, of Houston, Tex., for defendant Fred Mangum.

HANNAY, District Judge.

Plaintiffs, Palo R. Daniel and Palo R. Daniel, Jr., both residents of Harris County, Texas, filed this action against defendants O. & M. Manufacturing Company, a Texas corporation with principal place of business in Houston, Harris County, Texas, and Hoy Owen and Fred Mangum, both residents of Harris County, Texas, seeking to recover damages for the alleged infringement by defendants of letters patent No. Re. 22,956 issued to John Salzer, of Houston, Texas, as assignor to Palo R. Daniel on December 30, 1947, and pray for injunction against further infringement by said defendants.

Defendants allege that the patent in suit is void as a matter of law. Plaintiffs responded with a cross-motion for summary judgment praying that the patent in suit be declared valid.

The case came on for trial on plaintiffs' original petition and defendants' amended answer and counterclaim for unfair competition. The parties stipulated that the issue of damages and the determination of a reasonable royalty would be referred to a Master in the event judgment was for plaintiffs on the issues of validity and infringement. All other issues were submitted to the Court which here makes and enters the following findings of fact and conclusions of law.

Findings of Fact.

1.

The defendant Fred Mangum is a former employee of plaintiffs.

2.

Plaintiffs are the lawful owners of the re-issue patent in suit, to wit: John Salzer, Re. No. 22,956, dated December 30, 1947.

This is a patent action involving the validity and infringement of such re-issue patent on a machine for forming radiator fins.

3.

A radiator is essentially a heat exchange device and the growth of the radiator industry has followed closely the growth of the automobile industry.

4.

As early as 1914 high speed roller type machines for forming radiator fins having various configurations, corrugations, flutes, and bends, were in common use in the radiator industry. By 1934 radiator fins of the identical type as produced by the machines involved in this action were commonly employed in automobile radiators. By 1938 the design and construction of radiator fin forming machines was a distinctly crowded field.

5.

About 1938 John Salzer began work on a machine for the manufacture of radiator fin elements substantially identical with the fin shown in the Emmons patent, No. 1,998,663, dated April 23, 1935. This machine of Salzer's consisted basically of two sets of rollers through which a metal strip was successively passed. The first pair of rollers was provided with male and female cutting elements to produce laterally extending rows of louvers on the strip, but the first pair of rollers did not contain the "creasing elements" (shown at 72 and

73 on the Salzer patent drawings). The second pair of rollers was arranged to receive the strip and alternately bend the strip up and down. This machine did not operate very successfully because there was no way to control the height of the fin and therefore was not accepted by the plaintiff, Daniel.

#### 6.

After additional experimenting and approximately in 1941, Salzer completed the construction of a second such machine. This second machine also consisted of two pairs of rollers, but the first pair of rollers did include "creasing elements", it being believed by Salzer at this time that the "creasing elements" were necessary. On February 9, 1942, Salzer filed in the United States Patent Office his original application for letters patent upon a construction embodying essentially the elements of the second machine including the "creasing elements". This machine, after testing, was accepted by plaintiff, Daniel.

#### 7.

The "creasing elements" work-harden the metal strip and make it harder to bend.

#### 8.

On June 19, 1945, Salzer original patent No. 2,378,661 issued with three claims. Shortly thereafter Salzer delivered to the plaintiff, Palo R. Daniel, his machine with the "creasing elements", which Daniel proceeded to test briefly. On September 1, 1945 Salzer assigned his patent to Daniel; and one week later Salzer, at the request of his assignee Daniel through Daniel's attorney, filed application in the United States Patent Office for a re-issue patent.

#### 9.

In October, 1946 the defendant, Fred Mangum, started the construction of his first roller type machine. This machine was constructed substantially like the Salzer first machine (i. e. without "creasing elements"). Mangum's first machine was then used by a partnership consisting of Earl North, Al Parker, the defendant Hoy Owen, and the defendant Fred Mangum, at intermittent brief intervals through approximately February, 1947. This machine, while it would actually produce radiator fins, did not do so successfully for the reason that the dimensions of the bends could not be maintained uniformly.

#### 10.

In December, 1946, the defendant Mangum modified his first machine by adding "creasing elements" on the first pair of rollers so as to make this machine substantially like the Salzer No. 2 machine. This machine was intermittently used through December, 1947, but not thereafter.

#### 11.

By March, 1947 defendant Mangum had built another machine which omitted the "creasing elements" from the first pair of rollers, but which had added thereto in the first pair of rollers the male and female elements for the purpose of forming in the metal strip what the parties have termed "edge stiffeners". This form of machine worked satisfactorily.

#### 12.

On August 8, 1947 the plaintiff, after a visit to O. & M.'s plant, Palo R. Daniel, assignee, executed an affidavit (Defendants' Exhibit 20) to the effect that he had discovered that a machine without the "creasing elements" has an inherent capacity to perform the operation of bending the strip. Ten days later (August 18, 1947) Daniel's attorney filed in the United States Patent Office an amendment to the application for re-issue patent including the claims as ultimately appeared in the re-issue patent being asserted in this suit by plaintiffs, which amendment incorporated in support thereof the aforementioned affidavit of August 18, 1947.

#### 13.

Thereafter on December 30, 1947, re-issue patent No. 22,956, here in suit, issued. As disclosed in the file history of this re-issue patent, the Patent Office Examiner did not cite against the Salzer re-issue patent application the following patents:

| Patentee | Patent No. | Issue date & Filing date |
|---|---|---|
| J. M. Fedders | 1,148,670 | Aug. 3, 1915 (filed March 12, 1914) |
| H. C. Harrison | 1,212,482 | Jan. 16, 1917 (filed Nov. 29, 1915) |
| W. O. Emmons, et al. | 1,998,663 | April 23, 1935 (filed March 23, 1934) |
| H. W. Parrish, et al. | 2,232,964 | February 25, 1941 (filed October 26, 1933) |
| H. E. Schank, et al. | 2,329,789 | Sept. 21, 1943 (filed Nov. 16, 1939) |
| J. M. Fedders, et al. | 1,640,147 | Aug. 23, 1927 (filed May 5, 1925) |
| L. C. Shippy | 2,071,584 | Feb. 23, 1937 (filed Jan. 25, 1935) |

14.

The drawings of Salzer original patent No. 2,378,661 and the drawings of Salzer re-issue patent No. 22,956, are identical; the specification of the original and re-issue patent are substantially identical. The only material difference in the two patents appears in the claims.

15.

On February 9, 1948 plaintiffs filed the original complaint in this action.

16.

Both plaintiffs and defendants admit that they are in the radiator core replacement business and both manufacture the same type ribbon that has been manufactured for use by General Motors in some makes of General Motors automobiles since at least as early as 1934. The Emmons patent No. 1,998,663, dated April 23, 1935 shows the identical ribbon that is manufactured by both plaintiffs and defendants.

17.

Plaintiffs claim that defendants, O. & M. Manufacturing Company, have manufactured for their own use two types of machines for manufacturing the radiator ribbon which plaintiffs has alleged as being infringed, to-wit:

1. Machine No. 1 (Plaintiffs' Exhibits 10 and 11).

2. Machine No. 2 (Plaintiffs' Exhibit 12).

Machine No. 1 may be referred to as the machine with "creasing elements", while machine No. 2 may be referred to as the machine without "creasing elements".

18.

Plaintiffs assert that machine No. 1 infringes only claim 1 of the Salzer re-issue patent and assert that machine No. 2 infringes only claims 2, 3, 4, 7 and 8.

19.

Plaintiffs admit that defendants' machine No. 1 does not infringe claims 2 through 8 of the re-issue patent, and admit that machine No. 2 does not infringe claims 1, 5 and 6 of such patent.

20.

Defendant Mangum, after severing his relationship with the O. & M. Manufacturing Company made two machines similar to defendants' machine No. 2 (Plaintiffs' Exhibit 12) and made a third machine which was similar to defendants' machine No. 2, with the exception that he substituted "fluting chains" for the second pair of rollers.

21.

Plaintiffs' position as regards Mangum's machine with the "fluting chain" is that it infringes because the "fluting chain" is the mechanical equivalent of the second pair of rollers in plaintiffs' patent.

22.

Mangum's "fluting chain" function is similar to the fluting chain or shafts shown in the following patents in that the fluting chain of such patents is used, as is Mangum's, to make the accordian pleats in the metal strip closer together:

| Patentee | Patent No. | Issue date & Filing date |
|---|---|---|
| H. C. Harrison | 1,212,482 | Jan. 16, 1917 (filed Nov. 29, 1915) |
| L. C. Shippy | 2,071,584 | Feb. 23, 1937 (filed Jan. 25, 1935) |

### 23.

The Shippy patent, No. 2,071,584 shows a machine which has been in public use by the Harrison Radiator Company as early as 1935 to produce a fin substantially identical with that produced by the Salzer patented machine. The Shippy fin is shown by the Emmons patent No. 1,998,663.

### 24.

Plaintiffs have stipulated that a machine as disclosed by the Smith patent, No. 1,937,466, dated November 28, 1933 was in use at the Fedders Manufacturing Company, Buffalo, New York, as early as 1933 to manufacture automobile radiator heat exchanger fins.

### 25.

Plaintiffs have stipulated that a machine as disclosed by the Fedders et al. patent, No. 1,640,147, dated August 23, 1927 was in public use at the Fedders Manufacturing Company, Buffalo, New York as early as 1931 to manufacture automobile radiator heat exchanger fins.

### 26.

After the metal strip has passed through the first set of rollers it is completely formed so far as those skilled in the art are concerned and there is no "unformed portion" on the strip, since the strip has been distorted by the rollers and sometimes is even diminished in width as much as 1/16 of an inch.

### 27.

Neither the original nor re-issue patent specification of Salzer defines or explains the term "unformed portion" or bending at "the unformed portion" that is used in claims 2–8 of the re-issue patent. The re-issue specifications, on the contrary however, state at page 2, column 4, lines 6–17 that the strip is a "formed portion 69" after it has passed through the first pair of rollers and while it is in guideway or assembly 66. The specifications also state, page 2, column 4, lines 6–13, that the formed portion 69 of the sheet metal blank has a necessary partial bending. The specification clearly states that the bending is in the formed portion.

### 28.

The Salzer re-issue machine can be manufactured cheaper, and it works faster, than the original machine used by Daniel. It is also noiseless in operation.

### 29.

The Salzer re-issue patent did nothing more than to bring together the segments of prior art patents, particularly the Smith, Schank, Fedders and Harrison patents, which contained all of the elements recited in each of Claims 1 through 8 of the Salzer re-issue patent.

### 30.

The Salzer patent is a combination patent, in that it is a combination of previously known elements and principles.

## Conclusions of Law.

### 1.

This Court has jurisdiction of the parties and subject matter of this suit.

### 2.

When the art to which a patent relates is highly developed and in a crowded field, and where the patent is a combination patent of the type represented by that here in litigation, there is necessarily a greater burden for establishing invention and validity of the patent than in a new and unfamiliar field or with a basic discovery patent. McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, 1010; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, 167.

### 3.

A patent for a combination which unites old elements with no change in their function than that theretofore performed is not a patentable invention. Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed.

58; Ingersoll-Rand Co. v. Black & Decker Mfg. Co., 4 Cir., 192 F.2d 270, and cases there cited; and Stewart-Warner Corp. v. Lone Star Gas Co., 5 Cir., 195 F.2d 645.

### 4.

■ The Patent Office's failure to cite the closest pertinent prior patents upsets the presumption of validity of patents that otherwise would have been afforded against the defense of anticipation. Hoe & Co. v. Goss Printing Press Co., 2 Cir., 30 F.2d 271, 274, L. Hand, Judge; Ingersoll-Rand Co. v. Black & Decker Mfg. Co. supra.

### 5.

■ All of the claims of the Salzer re-issue patent are void, since numerous prior art patents "infringe" the Salzer patent and that which infringes a patent *anticipates* the same if it is earlier in date than the patent it infringes. 69 C.J.S., Patents, § 20, page 196; Bobbitt v. Midland Flour Milling Co., 8 Cir., 70 F.2d 416, 418; Faries Mfg. Co. v. S. W. Farber Mfg. Co., 2 Cir., 47 F.2d 571, 572; Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794, 800; Walker on Patents, Deller's Edition, Vol. II, pg. 1238.

### 6.

More particularly, Claim 1 of the Salzer re-issue patent is invalid because it is anticipated by patent No. 1,937,466, issued to L. C. Smith et al., upon application filed on the 2nd day of June, 1932. Zenitherm v. Art Marble Co., 5 Cir., 56 F.2d 39, 43; 69 C.J.S., Patents, § 20, page 196.

### 7.

More particularly, Claims 2 through 8 of the Salzer re-issue patent are invalid because anticipated by the following prior patents:

See authorities cited under Conclusion No. 6.

### 8.

All of the claims of the Salzer re-issue patent are invalid for the further reason that the machines on which such claims would read had been in prior public use for more than one year prior to the date on which Salzer filed his original application. 69 C.J.S., Patents, § 20, page 196.

### 9.

■ A patent is a contract between the public and the inventor, the consideration on the part of the inventor being a complete disclosure in "full, clear, concise, and exact" language and a particular claiming of the invention in accordance with R.S. § 4888, Title 35 U.S.C.A. § 33 and the consideration on the part of the public being the protection of the invention for the term of seventeen years. Walker on Patents, Deller's Ed. Vol. II, pg. 703; Zenitherm v. Art Marble Co. of America, supra; United Advertising Corp. of Texas v. Stimson, 5 Cir., 89 F.2d 450, 452; Beidler v. U. S., 253 U.S. 447, 451, 40 S.Ct. 564, 64 L.Ed. 1006, 1009; Permutit Co. v. Graver Corp., 284 U.S. 52, 52 S.Ct. 53, 55, 76 L.Ed. 163.

### 10.

■ If the invention is not disclosed in full, clear, concise and exact terms and is not particularly and distinctly claimed as required by R.S. § 4888, then consideration for the patent grant fails, and renders the patent, *though granted, void*.

See authorities cited under Conclusion No. 9.

### 11.

Claims 1 through 8 of the Salzer re-issue patent are void and invalid because they are not supported by clear and definite description in Salzer's specification and hence violate R.S. § 4888. 69 C.J.S., Patents, § 205,

| Patentee | Patent No. | Issue date and Filing date |
|---|---|---|
| H. E. Schank, et al. | 2,329,789 | Sept. 21, 1943 (filed Nov. 16, 1939) |
| J. M. Fedders | 1,148,670 | August 3, 1915 (filed March 12, 1934) |
| H. C. Harrison | 1,212,482 | Jan. 16, 1917 (filed Nov. 29, 1915) |
| L. C. Shippy | 2,071,584 | Feb. 23, 1937 (filed Jan. 25, 1935) |
| J. M. Fedders, et al. | 1,640,147 | Aug. 23, 1927 (filed May 5, 1925) |

page 698; American Fruit Growers v. Brogdex, 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 432, 22 S.Ct. 698, 46 L.Ed. 968, 984; Slayter & Co., v. Stebbins-Anderson Co., Inc., D.C., 31 F.Supp. 96, 104, 105; Ridsdale Ellis on "Patent Claims", Sec. 15, pg. 20; Sec. 25, pg. 28; Sec. 26, pgs. 28–29; Sec. 320, pg. 409; Sec. 323, pgs. 412–413; Sec. 324, pg. 414; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402; Walker on Patents, Vol. II, Sec. 277, pg. 1274; The Incandescent Lamp Patent, 159 U.S. 465, 474, 16 S.Ct. 75, 40 L.Ed. 221, 224.

The authorities here cited are also in point on Conclusions Nos. 12, 13 and 14.

### 12.

Claims 2 through 8 of the Salzer re-issue patent, if construed to read on a machine without the creasing elements in the first pair of rollers, are invalid for the further reason that the patent fails to comply with the requirements of § 4888, Title 35, U.S.C. A. § 33, that the invention be described in "full, clear, concise, and exact" language; and for the further reason that the specification and drawings do not disclose the best mode of use of the invention, as required by R.S. § 4888. Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 7, 9, 67 S.Ct. 6, 91 L.Ed. 3, 9 and 10.

### 13.

Claims 2 through 8, if they are to be construed as reading on a machine without the creasing elements in the first pair of rollers, are invalid for the further reason that they are in conflict with the specification and drawings, which disclose only a machine creasing element on the first pair of rollers, and for the reason, therefore, that such claims so construed are for a different invention than that disclosed in the specification and drawing. In re Adams, 117 F.2d 1017, 1018, 28 C.C.P.A., Patents, 949; Dayton Rubber Mfg. Co. v. Stagnaro, 6 Cir., 101 F.2d 808, 811.

### 14.

Claims 2 through 8 of the Salzer re-issue patent are invalid for the further reason that they are in conflict with the specifica-

tion in that such claims are directed to a machine which produces a metal strip with "an unformed portion extending laterally of the strip", whereas the only machine disclosed in the specification and drawings is a machine which is incapable of producing a strip with such an unformed portion, in that the drawings show unmistakably that the first pair of rollers contains male and female elements forming creases alternately extending upwardly and downwardly, and in that the specification specifies that the strip, after it has passed through the first pair of rollers, has a "formed portion" in which there is a "necessary partial bending." Zenitherm v. Art Marble Co., supra; Carnegie Steel Co. v. Cambria Iron Co., supra; Slayter Co. v. Stebbins-Anderson Co., Inc., supra; Ridsdale Ellis on Patent Claims, Sec. 323, pgs. 412, 413; United Advertising Corp. of Texas v. Stimson, supra; 69 C.J.S., Patents, § 205, page 698; Salzer Re-issue Patent Specification, pg. 2, col. 4, lines 6–17.

### 15.

Claims 2 through 8 of the Salzer re-issue patent are invalid and void because such claims are broader than the described invention, and hence do not comply with R.S. § 4888. Walker on Patents, Deller's Ed., Vol. II, pg. 1276.

### 16.

Claims 1 through 8 of the Salzer re-issue patent are invalid and void because they claim the function of the machine in terms of operating on the metal strip produced by such machine, rather than claiming the machine in terms of its physical characteristics, as required by R.S. § 4888. Ridsdale Ellis on Patent Claims, sec. 324, pg. 414; Halliburton Oil Well Cementing Co. v. Walker, supra; Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 255, 258, 48 S.Ct. 474, 72 L.Ed. 868, 873, and the numerous authorities cited therein; General Electric Co. v. Wabash Appliances Corp., supra.

### 17.

Claims 2 through 8 of the Salzer re-issue patent are invalid for the further reason that they fail to conform to the requirement of § 4916, Title 35, U.S.C.A. § 64, in that as a re-issue patent it improperly embodies

a *new and different* invention, not described or shown in the original patent specification or drawings. 69 C.J.S., Patents, §§ 174, 175, pages 639, 641; Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795, 799; Gill v. Wells, 22 Wall 1, 89 U.S. 1, 22 L.Ed. 699; Girdler Corp. v. E. I. DuPont De Nemours & Co., D.C., 59 F.Supp. 583, affirmed 3 Cir., 152 F.2d 757; U. S. Industrial Chemicals v. Carbide & Carbon Chemicals Corp., 315 U. S. 668, 62 S.Ct. 839, 86 L.Ed. 1105; White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U.S. 38, 42, 43, 14 S.Ct. 28, 37 L.Ed. 989; Ball v. Langles, 102 U.S. 128, 26 L.Ed. 104, 105; Russell v. Dodge, 93 U.S. 460, 23 L.Ed. 973.

### 18.

Claims 2 through 8 of the Salzer re-issue patent are *invalid* for the further reason that as a re-issue patent it was improperly issued because under the facts there is no *inadvertence, accident* or *mistake* which is a requisite for authorizing a re-issue patent under the statute. More specifically, there is no inadvertence, accident or mistake as required by the statute because that which is claimed in the re-issue patent was *known* to the inventor Salzer at the time he filed his original application for patent. He purposely omitted disclosing in this original patent a machine *without* "creasing elements" because he had built one, found it unsatisfactory, and had then built a machine with "creasing elements" as *disclosed* in his patent. Cridlebaugh v. Rudolph, supra; General Radio Co. v. Allen B. DuMont Laboratories, Inc., 3 Cir., 129 F.2d 608, 611; Toupet-Taylor Engineering Co. v. Red Dog Mfg. & Supply Co., 3 Cir., 16 F.2d 454.

### 19.

The Salzer re-issue patent is invalid because the claims thereof were amended by the assignee *five and one-half years after the filing of the original application,* and *after* the assignee *saw in operation* the defendant's machine corresponding to those alleged to infringe. Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 57, 59 S.Ct. 8, 83 L.Ed. 34, 39; Hestonville, M. & F. Pass. R. Co. v. McDuffee, 3 Cir., 185

F. 798, 802; Standard Oil Development Co. v. James B. Berry Son's Co., Inc., 3 Cir., 92 F.2d 386, 387, 388; Ronning Machinery Co. v. Caterpillar Tractor Co., D.C., 38 F. Supp. 783, 785, 786, affirmed 7 Cir., 129 F. 2d 70, certiorari denied 317 U.S. 670, 63 S. Ct. 75, 87 L.Ed. 538.

### 20.

An invalid patent cannot support a charge of infringement, because the patent must be valid before it can be infringed. Walker on Patents, Deller's Ed., Vol. III, pg. 1682; Cridlebaugh v. Rudolph, supra; M. Swift & Sons v. W. H. Coe Mfg. Co., 1 Cir., 102 F.2d 391.

### 21.

Claims 1 through 8 of the Salzer re-issue patent are not infringed by any machine manufactured or used by the defendants, because the patent is invalid.

See cases cited under Conclusion No. 20.

### 22.

Claims 2 through 8 of the Salzer re-issue patent are not infringed by any machine manufactured or used by the defendants, for the reason that none of the machines manufactured or used by the defendants produced a strip containing an *unformed portion.* Dry Hand Mop Co., Inc., v. Squeez-Ezy Mop Co., Inc., 5 Cir., 17 F.2d 465, 466; Getty v. Kinzbach Tool Co., 5 Cir., 119 F.2d 249, certiorari denied 314 U.S. 651, 62 S.Ct. 97, 86 L.Ed. 522; Walker on Patents, Deller's Ed. Vol. III, page 1695.

### 23.

Claim 1 of the Salzer re-issue patent is not infringed because there is no evidence to show that a machine embodying that which is claimed in Claim 1 was in use after the issue date of the re-issue patent (December 30, 1947). Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 491, 55 S.Ct. 455, 461, 79 L. Ed. 1005, and cases there cited.

### 24.

An inventor is entitled to claim his invention commensurate with the *disclosure* of each *invention* in the *specification and drawings;* but an inventor may not disclose and claim one invention in an orig-

344

inal patent and then by re-issuing the original patent claim a *new* and *different invention* which is *neither shown nor described* in the *original patent drawings or specification*. To do so is a violation of R.S. § 4916, Title 35, U.S.C.A. § 64 and *invalidates* the re-issue patent. United Advertising Corp. of Texas v. Stimson, supra; 69 C.J.S., Patents, § 174, pages 639, 640 and 641, and authorities there cited; 69 C.J.S., Patents, § 175, pages 641 and 642; White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303; U. S. Industrial Chemicals, Inc., v. Carbide & Chemicals Corp., supra; Gill v. Wells, 22 Wall. 1, 89 U.S. 1, 22 L.Ed. 699; Russell v. Dodge, supra; Ball v. Langles, supra; Leggett v. Avery, 101 U.S. 256, 25 L.Ed. 865.

25.

Accordingly, it is held:

(a) That the Salzer re-issue patent claims are invalid and void;

(b) That there is no infringement of the Salzer re-issue patent by either Machine No. 1 or Machine No. 2, or by the Mangum machine;

(c) The defendants are not liable to plaintiffs for any damages for the manufacture or sale of the accused machines;

(d) That the defendants take nothing by reason of their counterclaim;

(e) All injunctions heretofore granted in this cause are hereby dissolved;

(f) No attorney's fees should be granted to either plaintiffs or defendants;

(g) Defendants should recover all court costs incurred by them in this action.

Clerk will notify counsel.